UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WADE S. PARKER,

        Plaintiff,         Case No. 2:09-cv-212

v.        Honorable Robert Holmes Bell

BRENT LABADIE et al.,

        Defendants.
        _____/

## OPINION

Plaintiff currently is incarcerated at Saginaw Correctional Facility (SRF), but the events underlying his complaint occurred at Newberry Correctional Facility (NCF). In his *pro se* complaint, he sues the following NCF employees: Correctional Officers Brent Labadie and unknown Zellar, nurse unknown Pelletrim, counselor unknown Blair, Inspector Gregory Schultz, grievance coordinator S. Farley, and Warden Barry Davis. He also sues Internal Affair Division Manager Stephen Marschke, grievance administrator unknown Armstrong and Michigan State Police Detective Sergeant William Smith.

Plaintiff alleges that he was verbally sexually harassed by Defendant Labadie. He also alleges that Defendant Labadie physically assaulted him by pulling a chair out from under Plaintiff causing him to fall to the ground and injure his lower back and his arm. Plaintiff raises five claims in his complaint: (1) sexual harassment; (2) assault and battery; (3) conspiracy to cover up assault; (4) denial of medical care; and (5) denial of an effective grievance procedure.

On January 6, 2010, the court dismissed Defendants Unknown Pelletrim, Unknown Blair, Gregory Schultz, S. Farley, Barry Davis, Stephen Marschke, Unknown Armstrong, and William

Smith for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e©).  Therefore, the only remaining claims are Plaintiff's claim against Defendant Brent Labadie for sexual harassment, assault and denial of medical care, and his claim against Defendant Unknown Zellar for denial of medical care.  Plaintiff is seeking compensatory and punitive damages, as well as declaratory relief.

Presently before the Court is the Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56.  Plaintiff has filed a response and the matter is ready for decision.  Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56©); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v.*

*Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

As noted above, Plaintiff claims that Defendants Labadie and Zellar violated his rights under the Eighth Amendment. Plaintiff claims that in May of 2008, Defendant Labadie began to sexually harass him by making degrading, demeaning and derogatory sexual comments. He implied that Plaintiff was homosexual and called him a "black troll fag" or "bitch." On July 3, 2008, Defendant Labadie ransacked Plaintiff's bunk area while Plaintiff was at a meal. Around 7:00 p.m. that night, Defendant Labadie came into "Cube A" and verbally harassed Plaintiff. Labadie then went to Plaintiff's locker and stated that Plaintiff's lock would not open. Plaintiff stood up from the chair where he had been sitting to remove the lock and then sat back down. However, Defendant Labadie pulled the chair from underneath Plaintiff causing Plaintiff to land on the floor. Plaintiff states that it caused severe pain and injury to his back, tail-bone, buttocks, hip and groin area. He also sustained an abrasion on his left shoulder where his arm struck the bed-pole. After the incident, Defendant Labadie laughed and walked away.

Plaintiff also alleges that Defendant Labadie denied him medical care after pulling the chair out from under him, and forced him to lie on the health care request form in order to receive medical care. Defendant Zellar returned to the unit about thirty minutes later and Plaintiff told him about the incident and asked for a health care request. Defendant Zellar told Plaintiff that they did not have any forms, but that Zellar would call health care. Defendant Zellar later told Plaintiff that he did not call health care.

Plaintiff eventually agreed to lie on the incident report and say that he fell on the floor so that he could receive medical treatment. About two hours later, Defendant Labadie escorted Plaintiff to health care. Defendant Nurse Pelletrim examined Plaintiff, determined that he had bruised

his lower torso and back and had an abrasion on his left arm. Defendant Pelletrim gave Plaintiff two Motrin for the pain and a medical detail for ice.

On July 8, 2008, Plaintiff filed a grievance regarding Defendant Labadie's sexual harassment. On July 14, he was interviewed by Defendant Schultz regarding the grievance and was told that Schultz was going to investigate the grievance.

In support of their motion for summary judgment, Defendants offer the affidavit of Defendant Labadie, in which he denies making any derogatory sexual remarks toward Plaintiff. Defendant Labadie attests that on July 3, 2008, after the evening meal, Plaintiff approached him and accused him of switching the locks on his footlocker. Defendant Labadie returned to Plaintiff's cell with him and Plaintiff sat down on a chair in his cell. Defendant Labadie opened Plaintiff's lock, turned around, and handed Plaintiff the lock. Plaintiff then stood up and walked over to his locker. Defendant Labadie then began to exit the cube, moving the chair that Plaintiff had been sitting on because it was blocking the exit. Defendant Labadie then returned to the officer's desk. Shortly thereafter, Plaintiff approached the officer's desk and accused Defendant Labadie of purposely moving his chair and causing him to fall on the floor. Plaintiff claimed that he had injured himself, so Defendant Labadie asked Plaintiff several times if he wanted to see the nurse. Plaintiff refused each time. (Defendants' Exhibit B, ¶¶ 6-12.)

Defendant Zellar attests that, contrary to the allegations in Plaintiff's complaint, Plaintiff never told her that Defendant Labadie had assaulted him, denied him medical treatment, or threatened him in an attempt to have him lie on a health care request. On July 3, 2008, Plaintiff approached Defendant Zellar and asked for help with a "little problem." Plaintiff explained that he had been involved in an incident with Defendant Labadie, and that Defendant Labadie had pulled out Plaintiff's chair while he was attempting to sit down. Plaintiff explained that the incident could turn

into a "big deal" and cause Defendant Labadie a lot of problems. Plaintiff stated that he had seen "stuff" like that before and that the prisoner "gets a ride-out and it all goes away." After pausing for a moment, Plaintiff then stated that if Defendant Zellar could help him get transferred "down state," Defendant Labadie would not have to get in any trouble. (Defendant's Exhibit C, ¶¶ 5-9.)

Defendants offer a copy of Plaintiff's medical records for the pertinent time period. According to these records, Nurse Sharon L. Pelletier, R.N. saw Plaintiff on July 3, 2008, and instructed Plaintiff to take 600 mg of Motrin every 6 hours for discomfort and to contact health services with any new complaints. On July 18, 2008, Dr.. William A. Warren, M.D. saw Plaintiff for a "sacro-coccygeal" injury which occurred one week prior. Dr. Warren concluded that Plaintiff was suffering from a sprain/contusion and determined that there was no need for an x-ray. On August 1, 2008, Nurse Donna M. Kavar, R.N. saw Plaintiff for lower back pain related to the July 3, 2008, injury. In the objective findings, Nurse Kavar noted that Plaintiff ambulated into health care with an erect posture and steady gait, appearing to be in no acute distress. In addition, she noted that Plaintiff had no swelling, bruising or spasms in his lower back. Plaintiff stated that he could only bend slightly forward due to pain, but was observed sitting and standing from chair in a fluid motion multiple times with no difficulty. Plaintiff was also able to twist from side to side with no difficulty and denied any numbness or tingling in his lower extremities. On September 8, 2008, Plaintiff received an x-ray of his AP and lateral lumbar spine, which revealed no evidence of fracture, dislocation, or other gross osseous or articular abnormalities. (Defendants' Exhibit E, pp. 1-4.)

On January 5, 2009, Plaintiff was seen by Dr. Joseph R. Burtch, M.D., pursuant to Plaintiff's request for a left knee brace and bottom bunk detail. Dr. Burtch noted that Plaintiff had a history of chronic fracture of the left femoral notch, which had been operated on, and that on September 25, 1998, Orthopaedics stated that it was a "bad problem" and that Plaintiff would have

pain to varying degrees on a chronic basis. On June 3, 2009, Plaintiff was seen by Nurse Richard M. Dodman, R.N., for complaints of headache, neck pain, left shoulder pain, and left knee pain, which Plaintiff claims were from a fall from a chair on May 31, 2009. Nurse Dodman noted that Plaintiff had ambulated to health care independently, without limping. In addition, Plaintiff did not exhibit swelling, edema, or discoloration in his left knee, and had full range of motion in his left lower extremity. On June 9, 2009, Plaintiff received x-rays of his cervical and lumbar spine, which revealed no signs of fracture, dislocation, or other abnormalities. Plaintiff's right knee was also x-rayed and was found to be normal. (Defendants' Exhibit E, pp. 8-12.)

In response to Defendants' motion, Plaintiff reasserts the allegations set forth in his complaint and attaches the affidavit of prisoner David Kirkland-Bey. In this affidavit, Kirkland-Bey attests that prior to July 3, 2008, he observed Defendant Labadie calling Plaintiff his "black bitch, fag troll, sissy boy" and other demeaning names. In addition, Kirkland-Bey observed Defendant making obscene gestures toward Plaintiff by grabbing his penis and "gravitating" his hips, while asking Plaintiff if that was what he wanted. On July 3, 2008, Kirkland-Bey observed Defendant Labadie attacking Plaintiff verbally with derogatory sexual comments. Kirkland-Bey also observed Defendant Labadie pull the chair from under Plaintiff, causing Plaintiff to fall and injure himself, while Defendant Labadie laughed. Kirkland-Bey attests that Defendant Labadie refused Plaintiff medical care and that Plaintiff was not seen by health services until hours after the incident, at approximately 9:30 p.m. (Plaintiff's Exhibit A.)

Plaintiff's claims of sexual harassment by Defendant Labadie are properly dismissed. "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain'

forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted). "To prevail on a constitutional claim of sexual harassment, an inmate must therefore prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." *Freitas*, 109 F.3d at 1338 (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

Circuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the unnecessary and wanton infliction of pain. *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th Cir. March 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary and wanton infliction of pain); *cf. Seltzer-Bey v. Delo*, 66 F.3d 961, 962-63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment); *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (magistrate judge correctly held that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim). Other courts have held that even minor,

isolated incidents of sexual touching coupled with occasional offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g., Jackson v. Madery,* 158 F. App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris,* 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v. Schneider*, 105 F.3d 857, 859-61 (2d Cir. 1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

If true, Defendant Labadie's conduct toward Plaintiff was reprehensible, but it does not rise to the level of an Eighth Amendment violation. Plaintiff does not allege that Defendant Labadieever touched him in a sexual manner. Acts of verbal sexual harassment, standing alone, are insufficient to state a claim under the Eighth Amendment. *See Morales*, 278 F.3d at 132; *Zander*, 1998 WL 384625, at *2. Therefore, Plaintiff's allegation fails to state an Eighth Amendment claim against Defendant Labadie.

In addition, Defendants are entitled to summary judgment on Plaintiff's claim that he was denied medical care. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide

such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

In this case, Plaintiff was allegedly injured after the evening meal on July 3, 2008, and received medical attention at 9:24 p.m., when he was given Motrin. Subsequent medical appointments show that Plaintiff did not suffer any serious injury and that he was treated appropriately. (Defendants' Exhibit E.) The court concludes that a delay of three hours in order to receive treatment for a sprain/contusion does not rise to the level of an Eighth Amendment violation.

Finally, with regard to Plaintiff's claim that Defendant Labadie assaulted him, the court notes that the Defendants' version of the events is contrary to Plaintiff's version and that each party supports their version with affidavits. Plaintiff also offers the affidavit of a prisoner witness in support of his claim. Therefore, the court concludes that there is an issue of fact with regard to this claim. Consequently, Defendant Labadie is not entitled to summary judgment on Plaintiff's assault claim.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As previously discussed, because Plaintiff cannot establish he was sexually harassed or denied medical treatment in violation of the Eighth Amendment, Defendants are entitled to qualified immunity on these claims.

However, as noted above, there is an issue of fact regarding whether Defendant Labadie assaulted Plaintiff by pulling his chair out from under him, causing injury. Because such conduct is sufficient to violated Plaintiff's constitutional rights, Defendant Labadie is not entitled to qualified immunity on this claim. *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010).

In light of the foregoing, the court concludes that Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment with regard to Plaintiff's claims that he was sexually harassed and denied medical treatment. However, Defendant Labadie is not entitled to summary judgment on Plaintiff's claim of assault. Accordingly, it is recommended that defendant's Motion for Summary Judgment (docket #18) be granted, in part, and denied, in part.

An Order consistent with this Opinion will be entered.

Dated: February 14, 2011 /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE